IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BOARD OF TRUSTEES OF THE IRON WORKERS ST. LOUIS DISTRICT COUNCIL PENSION TRUST et al., | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 23-cv-444-SMY |
| vs. | )<br>)<br>) |
| TOTAL STEEL SERVICES, LLC et al. | )<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs filed the instant lawsuit against Defendants Total Steel Services, LLC ("Total Steel"), John Raney, Kenneth Helmick, Ronald Stork, and Joan Stork pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 to collect (1) unpaid fringe benefit payments owed to the Iron Workers St. Louis District Council Pension Trust, the Iron Workers St. Louis District Council Annuity Trust, and the Iron Workers St. Louis District Council Welfare Plan (collectively, "IWSTLDC Trust Funds") and (2) unpaid work assessments, payroll deductions, and contribution payments owed to Local 392, Local 396, and Local 782, and their affiliated trust funds for work performed within the territorial jurisdiction of the IWSTLDC by Total Steel's iron worker employees. Plaintiffs move for summary judgment (Doc. 56), which Defendants oppose (Doc. 59). For the following reasons, the motion is **DENIED**.

### Factual Background

Construed in the light most favorable to Defendants, the evidence and reasonable inferences establish the following facts relevant to the pending summary judgment motion: The

Boards of Trustees ("Trustees") are fiduciaries for the Iron Workers St. Louis District Council Annuity Trust and the Iron Workers St. Louis District Council Welfare Plan (collectively, "IWSTLDC Trust Funds") (Docs. 56-1; 56-2; 56-3). The Trustees are authorized to file suit on behalf of participants and beneficiaries of the IWSTLDC Trust Funds for purposes of collecting unpaid contributions from individual employers. *Id.*

The IWSTLDC Trust Funds are multiemployer plans that receive contributions from employers pursuant to the collective bargaining agreements ("CBAs") of local unions affiliated with the IWSTLDC (Doc. 56-4, at ¶¶ 3, 4, 11). Under their respective Agreements and Declarations of Trust ("Trust Agreements"), the Trustees adopted an Audit and Collection Policy and Procedures ("Audit and Collection Policy"), which governs the collection of employer contributions and payroll compliance audits (Doc. 56-4, at ¶ 14).

Defendant Total Steel Services, LLC ("Total Steel") is a steel erection company based in Sparta, Illinois that specializes in erecting metal buildings (Doc. 56-8, p. 35). Total Steel has been signatory to a Multiemployer Welfare, Pension and Annuity Participation Agreement ("Participation Agreement") with the IWSTLDC Trust Funds since August 6, 2020 (Doc. 56-9). The Participation Agreement requires Total Steel to make contribution payments to the IWSTLDC Trust Funds for each of Total Steel's iron worker employees "in the amount and in conformance with the terms and provisions of the respective current collective bargaining agreement of the Iron Workers Local Union within whose territorial jurisdiction work is performed." *Id.* Through the Participation Agreement, Total Steel agreed to be bound as an employer to the terms and provisions of the Trust Agreements for each of the IWSTLDC Trust Funds and by the terms of the CBAs for Local 46, Local 392, Local 396, and Local 782. *Id.* Pursuant to the provisions of the Trust Agreements, the Audit and Collection Policy, and the

various CBAs of the Local Unions that make up the IWSTLDC, Total Steel is required to submit contribution reports and associated payments to the IWSTLDC Trust Funds for each hour that its employees perform bargaining unit work within the territorial jurisdiction of the IWSTLDC (Docs. 56-1 to 56-3; Docs. 56-11 to 56-16). Monthly contribution reports and associated payments for all bargaining unit work are required to be submitted to the IWSTLDC Trust Funds no later than fifteen (15) calendar days after the end of the month being reported (Doc. 56-10).

Employers who fail to timely submit their contribution reports and/or contributions to the IWSTLDC Trust Funds are responsible for the payment of liquidated damages equal to ten percent (10%) of the amount unpaid, and interest at the rate of one and a half percent (1.5%) per month compounded monthly unless explicitly stated otherwise in the applicable CBA, plus any reasonable attorneys' fees and costs (Docs. 56-1 to 56-3; Docs. 56-11 to 56-16). Under the CBAs of Locals 392, 396, and 782, Total Steel was required to remit work assessments, contributions and payroll deductions to the Local Funds (Docs. 56-11 to 56-16). Under Local 782 CBAs, Total Steel was obligated to pay a one-time liquidated damages charge of ten percent (10%) on all delinquent work assessments owed to Local 782 that were not received by the twentieth (20th) day of the month following the month in which the work was performed (Docs. 56-15, 56-16).

Total Steel was formed in mid-2019 (Doc. 59-5, p. 10). Defendants Ronald Stork, Kenneth Helmick, and John Raney were co-owners and members of Total Steel (Doc. 56-8, p. 20). Ronald Stork was the manager of Total Steel (Doc. 56-8, at pp. 20-21). Helmick and Raney worked as project managers and estimators for Total Steel (Doc. 56-17, p. 9; Doc. 56-18, p. 18). Helmick and Raney received a salary from Total Steel, but Stork did not (Doc. 56-8, p. 25). Ronald Stork's wife, Joan, was the office manager for Total Steel (Doc. 56-8, p. 11, p. 20). Joan

Stork was not a member of Total Steel (Doc. 59-2, p. 20). Joan Stork's duties as office manager included accounts receivable, accounts payable, the general ledger, job costing, and payroll. *Id.* Joan Stork also calculated the fringe benefits owed by Total Steel and wrote checks to the IWSTLDC Trust Funds and local unions. *Id.* at pp. 16-17.

The Storks infused approximately $130,000.00 of capital into Total Steel at its startup. (Doc. 56-19, p. 17). The Storks also took out a personal loan to pay a creditor of Total Steel in December 2023 (Doc. 56-8, p. 38; Doc. 56-17, p. 18; Doc. 56-18, p. 29; Doc. 56-19, p. 17). Total Steel filed its own annual report with the Illinois Secretary of State (Doc. 59-13). It also utilized software for company documents and maintained records for its accounts payable accounts receivable, general ledgers, job costing and estimating, and payroll (Doc. 59-2, pp. 11-12).

Until September 2023, Total Steel operated out of a building located at 1255 W. Broadway in Sparta, Illinois owned by the Storks (Doc. 56-8, p. 12). Total Steel did not pay rent for use of the office space. *Id*. at pp. 36-37. From December 2021 to June 2023, Total Steel also rented space from Ron's Construction Services, Inc. at 820 West 2nd Street in Sparta for its shop building and for use of the metal fabrication equipment (Doc. 59-1, at ¶ 28; Doc. 56-8, p. 37). The Storks owned Ron's Construction Services (Doc. 56-8, p. 30).

Total Steel had a revolving line of credit at First National Bank of Steeleville that was signed and personally guaranteed by Total Steel's members and the members' spouses and secured by Total Steel's accounts receivable (Doc. 56-8, p. 19; Doc. 56-20; Doc. 59-1, at ¶ 25). Total Steel's revolving line of credit was fully paid off in February 2024 using Total Steel's accounts receivable, which was the security for the line of credit (Doc. 56-8, pp. 19-20; Doc. 59-1, at ¶ 25).

During the period of January 7, 2022, through March 4, 2024, Total Steel paid approximately $20,138.22 to Ron's Construction Services (Doc. 56-22). Some of the payments made by Total Steel to Ron's Construction Services were for health insurance that Total Steel provided for one of its shop employees through a Blue Cross Blue Shield policy in the name of Ron's Construction Services (Doc. 56-8, pp. 46-48). Total Steel accepted payments from Ron's Construction Services to make payments on Total Steel's debts (Doc. 56-8, p. 53).

Ronald Stork, Helmick, and Raney previously had an ownership interest in a company called Total Glass, LLC (Doc. 56-17, p. 24; Doc. 56-18, p. 35; Doc. 56-19, p. 18). Joan Stork helped set up Total Glass' bookkeeping (Doc. 56-8, p. 56). Total Steel and Total Glass operated out of the same building for a period of time. *Id.* at p. 14. Total Glass performed some work for Total Steel as a subcontractor (Doc. 59-2, p. 45). Total Glass invoiced Total Steel when Total Glass performed work for Total Steel (Doc. 59-7, pp. 22-23). Total Steel provided a loan to Total Glass in an estimated amount of $50,000.00 (Doc. 56-18, p. 34; Doc. 56-19, p. 17). Total Glass paid back Total Steel the full amount of the loan (Doc. 59-2, p. 56; Doc. 59-7, p. 17).

Total Steel failed to pay contributions, payroll deductions, and work assessments to Plaintiffs for the work months of October 2022, November 2022, and December 2022 (Doc. 56-17, pp. 12-13). Specifically, Total Steel submitted monthly contribution reports but failed to pay contributions to the IWSTLDC Trust Funds and contributions and work assessments to the local unions for October 2022, November 2022, and December 2022 (Doc. 56-4, at ¶ 18). Total Steel continued to perform work into February 2023 (Doc. 56-17, pp. 12-13; Doc. 56-18, pp. 16-23). While Total Steel continued to operate, the company's bank account was decreasing (Doc. 56-8, p. 35; Doc. 56-17, p. 16). Total Steel's iron worker employees were pulled from Total Steel's jobs by Local 392 in February 2023 (Doc. 59-5, pp. 23-24; Doc. 59-2, pp. 21-23).

Anders Minkler Huber & Helm LLP ("Anders") is the payroll compliance auditor for the IWSTLDC Trust Funds (Doc. 56-4, at ¶ 20). Anders performed a series of payroll compliance audits of Total Steel for the period of June 1, 2019, through December 31, 2022. *Id*. at ¶ 21. The payroll compliance audit completed of Total Steel for Local 46 ("Local 46 Audit") revealed that Total Steel failed to pay contributions to the IWSTLDC Trust Funds for 24 hours of work performed within the trade and territorial jurisdiction of Local 46 (Doc. 56-23).

The payroll compliance audit completed of Total Steel for Local 392 ("Local 392 Audit") revealed that Total Steel failed to pay contributions to the IWSTLDC Trust Funds for 8,225 hours of work performed within the trade and territorial jurisdiction of Local 392 (Doc. 56-5, at ¶ 14; Doc. 56-24).

The payroll compliance audit completed of Total Steel for Local 396 ("Local 396 Audit") revealed that Total Steel failed to pay contributions to the IWSTLDC Trust Funds for 2,109.5 hours of work performed within the trade and territorial jurisdiction of Local 396 (Doc. 56-6, at ¶ 13; Doc. 56-25).

The payroll compliance audit completed of Total Steel for Local 782 ("Local 782 Audit") revealed that Total Steel failed to pay contributions to the IWSTLDC Trust Funds for 853.5 hours of work performed within the trade and territorial jurisdiction of Local 782 (Doc. 56-7, at ¶ 12; Doc. 56-26).

The amount of contributions and liquidated damages owed by Total Steel is disputed. Plaintiffs believe that Total Steel failed to remit $324,823.57 in contributions to the IWSTLDC Trust Funds and that Total Steel owes $32,514.54 in liquidated damages and $78,017.11 in interest (Doc. 56-4, at ¶ 26). Defendants believe that Total Steel's contribution delinquicy is $295,479.54 (Doc. 59-4). The parties also dispute whether Total Steel has failed to pay work

assessments, payroll deductions, and contributions to Locals 392, 396, and 782 (Doc. 56-5, at ¶ 5; Doc. 59-1, at ¶ 22; Doc. 59-6).

Prior to the Local 392 Audit being issued, Plaintiffs received third-party payments in the amount of $50,322.42 that were applied toward contributions owed to the IWSTLDC Trust Funds for work performed within the trade and territorial jurisdiction of Local 392 (Doc. 56-4, at ¶ 27). In addition to the audit findings, Total Steel owes the IWSTLDC Trust Funds liquidated damages in the aggregate amount of $49,993.23 due to its late payment of contributions to the IWSTLDC Trust Funds for the work months of May 2019, March 2020, September 2021, January 2022, April 2022, July 2022, August 2022, and September 2022 (Doc. 56-4, at ¶¶ 29-30).

Total Steel has open accounts receivable and roughly $5,000.00 in miscellaneous assets (Doc. 56-8, p. 18; Doc. 56-19, pp. 23-24). The Storks also paid $34,000 from their own bank accounts, plus $22,000 from a note they took out from the bank to a creditor of Total Steel (Doc. 56-8, pp. 39-40).

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to summary judgment if the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine

issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

## ERISA

Section 515 of ERISA statutorily requires an employer who is obligated to make contributions under a plan or collective bargaining agreements to make those payments according to the terms of the plan. 29 U.S.C. § 1145. If an employer fails to make required contributions to a plan, ERISA Section 502(g)(2) permits a fiduciary of the plan to enforce its right to those contributions by filing a federal civil action. 29 U.S.C. § 1132(g)(2). The statute compels courts to award the total unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs of the action, to be paid by the defendant, and such other legal or equitable relief as the court deems appropriate. *Id.* § 1132(g)(2)(A–E). The "special remedies" included in the statute—*i.e.* interest, liquidated damages, *etc.*—are mandatory and must be awarded if the court concludes that a defendant did not pay required contributions. *Laborers Health & Welfare Tr. Fund For N. California v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988); *see also Laborers' Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004) (ERISA requires a court to award attorneys' fees and costs to a prevailing fiduciary in an action to collect delinquent contributions).

Plaintiffs assert that they are entitled to judgment as a matter of law against the Defendants because its payroll compliance audits confirmed that Total Steel failed to pay all contributions, payroll deductions, and works assessments reported by the company as being owed to Plaintiffs during the audit period. Plaintiffs contend that Total Steel owes the following amounts: $274,501.15 in contributions, $32,514.54 in liquidated damages, and $78,017.11 in interest to IWSTLDC Trust Funds; $7,966.01 in unpaid work assessments, payroll deductions,

and contributions to the Local 392 Funds; $2,045.17 in unpaid work assessments and contributions to the Local 396 Funds; $1,629.51 in work assessments, $1,340.57 in contributions and payroll deductions, and $162.95 in liquidated damages to the Local 782 Funds; and liquidated damages in the aggregate amount of $49,993.23 to the IWSTLDC Trust Funds.

Citing *Laborers' Pension Fund v. A & C Env't, Inc.,* 301 F.3d 768, 783 (7th Cir. 2002), Plaintiffs argue that Total Steel bears the burden of maintaining adequate records of covered work performed and, in the absence of specific evidence to the contrary, the amounts shown in the audit are presumed to be correct. However, "the rule prevents summary judgment against a fund when the fund is unable to prove damages with specificity because of the employer's failure to keep adequate records." *Id*. In other words, the rule does not apply to compel judgment against an employer when the employer raises a genuine issue of material fact as to the accuracy of the fund's calculations. *Id*.; *see also Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking,* 71 F.3d 1361, 1367 (7th Cir.1995) (employer's failure to come forward with documentary evidence establishing amount of covered work performed was not fatal in effort to oppose fund's motion for summary judgment when factual issues remained as to the amount owed). Here, genuine issues of material fact regarding the total amount due precludes summary judgment.

Total Steel concedes that it owes contribution payments to the IWSTLDC Trust Funds but maintains that Plaintiffs figures are inaccurate. In support of its position, Total Steel provides a Declaration from Joan Stark, who was responsible for Total Steel's accounts receivable, accounts payable, general ledger, and payroll. According to Total Steels reports and documentation, Total Steel has paid all work assessments, payroll deductions, and contributions

owed to Local 392, Local 396, and Local 782 Funds. Total Steel also calculated its delinquency to the IWSTLDC trust Funds as $245,157.12.

Plaintiffs and Total Steel proffer different amounts allegedly due in contributions. The parties also dispute whether Total Steel has completely paid off all work assessments and payroll deductions due to the local unions of the IWSTLDC. These factual disputes are material and preclude summary judgment.

### Piercing the Corporate Veil

Plaintiffs also argue Total Steel's corporate veil should be pierced to hold the Storks, Raney, and Helmick personally liable for Total Steel's liabilities. Under Illinois law, a corporation is presumed to be "separate and distinct from its officers, shareholders, and directors, and those parties will not be held personally liable for the corporation's debts and obligations." *Tower Investors, LLC v. 111 E. Chestnut Consultants, Inc.,* 864 N.E.2d 927, 941 (Ill.App.Ct. 2007). A corporation's veil of limited liability will be pierced only when there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and when "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn Co. v. Future Chem. & Oil Corp.,* 753 F.2d 565, 569–70 (7th Cir. 1985) (quoting *Macaluso v. Jenkins,* 420 N.E.2d 251, 255 (Ill.App.Ct. 1981). Piercing the corporate veil is not favored and courts are reluctant to do so. *CM Corp. v. Oberer Dev. Co.,* 631 F.2d 536 (7th Cir. 1980). Thus, the party seeking to disregard the corporate entity must make "a substantial showing that the corporation is really a dummy or sham for a dominating personality." *Roiser v. Cascade Mountain, Inc.,* 855 N.E.2d 243, 251 (2006).

Courts consider the following factors to determine whether the "unity of interest and ownership" between an individual and a corporation is such that the corporate fiction should be

disregarded: "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) non-functioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a shareholder; (10) failure to maintain arm's length relationships among related entities; and (11) whether the corporation is a mere facade for the operation of the dominant shareholders." *Fontana v. TLD Builders, Inc.,* 840 N.E.2d 767, 778 (2005). No one factor is determinative. With respect to these factors, Plaintiffs contend that Total Steel was undercapitalized and failed to maintain an arms' length relationship among related corporate and personal entities.

Plaintiffs argue that Total Steel was undercapitalized because it was losing money. But the fact that a corporation is losing money does not show that it was undercapitalized. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,* 529 F.3d 371, 379 (7th Cir. 2008). Undercapitalization will rarely if ever be the only factor that supports a decision to pierce the corporate veil. *Browning–Ferris Indus. of Ill., Inc. v. Ter Maat,* 195 F.3d 953, 961 (7th Cir. 1999).

Plaintiffs also argue that Total Steel was undercapitalized because it was unable to fulfill its financial obligations to Plaintiffs beginning in October 2022 yet continued to operate the business until at least February 2023. However, this evidence is insufficient to show that Total Steel was so undercapitalized that it was a pure shell. Total Steel was not undercapitalized at its establishment and operated its business for four years. As of October 2022, Total Steel had over $1,000,000 in receivables. The Storks infused Total Steel with additional capital in December 2023 when they took out a personal loan to pay a creditor of Total Steel. The infusions of cash by the Storks show that they were not interested in draining Total Steel of its assets. Rather, the

Storks were willing to infuse cash into the company to help it survive and meet its debts. Plaintiffs have not shown undercapitalization. *See Firstar Bank*, 249 F. Supp. 2d at 1042 (evidence that shareholder infused dealership with cash did not support a claim that the dealership was so undercapitalized that it was a pure shell).

Next, Plaintiffs argue that the individual defendants failed to maintain an arms' length relationship among related corporate and personal entities because there was common management, the commingling of assets, and common ownership. Plaintiffs point to the fact that Total Steel made payments to Ron's Construction Services, Inc. for health insurance that Total Steel provided for one of its shop employees through a Blue Cross Blue Shield policy in the name of Ron's Construction Services, Inc. Plaintiffs also maintain that Total Steel made payments to Ron's Constructions Services for rent at 820 West 2nd Street and loaned money to Total Glass.

Total Steel's partial integration with Ron's Construction Services, Inc. for property and equipment rentals and employee benefits does not prove, as a matter of law, that the companies improperly commingled assets or failed to maintain an arm's-length relationship. *Papa v. Katy Indus.*, 166 F.3d 937, 943 (7th Cir. 1999) (integration of workforces and functions will not trigger loss of limited liability through piercing of corporate veil). And Total Steel's rental of the building does not establish commingling assets. *See Jacobson v. Buffalo Rock Shooters Supply, Inc.,* 664 N.E.2d 328, 332 (1996) (declining to pierce the veil of a corporation which operated out of the same building as its owner and blurred some of the distinctions of separation). As for the loaning of money to Total Glass, the loan was fully paid off.

The principle that "[a] corporation is a legal entity separate and distinct from its shareholders, directors, and officers .... applies even where one corporation wholly owns another

and the two have mutual dealings." *Judson,* 529 F.3d at 380, *quoting Joiner v. Ryder Sys. Inc.,* 966 F. Supp. 1478, 1483 (C.D. Ill. 1996). Plaintiffs have failed to establish the requisite factors to pierce Total Steel's corporate veil. Accordingly, the motion is **DENIED**.

### Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Doc. 56) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  June 23, 2025**

**STACI M. YANDLE**
**United States District Judge**